Plaintiff is the holder of an installment note for the sum of $486 signed by Hugh Fisher, Ed. Fisher and Katherine Fisher. The note is dated January 9, 1942, and is made payable in eighteen installments of the sum of $26 each, payable on the 9th day of each and every month following the date of its execution. It bears interest "after maturity at highest rate in Louisiana", and contains a clause accelerating the maturity of the full amount upon failure to pay any installment as the same becomes due each month. It also provides for an additional 20 per cent. as attorneys' fees in the event it is placed in the hands of an attorney for collection, if not paid at maturity.
In its petition plaintiff avers that the defendants have failed to pay the installments which matured October 9th and November 9th, 1942, and therefore the note is due in its entirety in the principal sum of $304, which is the balance remaining unpaid, with 8% interest and 20 per cent. additional as attorneys' fees. It prays for judgment against all three signers, jointly and in solido, for the full amount stated.
The defendant Hugh Fisher entered the military service of the United States after he had signed the note and had made payments thereon, and he purposely was not cited. As far as he is concerned, therefore, there is nothing pending before the court.
Ed. Fisher and Katherine Fisher filed a joint answer in which, after stating that Hugh Fisher is now in the military service of the United States and that the obligation sued on had been incurred prior to his entry, they admit that they subscribed the said note with him, but in the capacity of accommodation makers only, as he was the principal maker. They then aver that because of his said service, his ability to meet and perform the obligation incurred by him has been affected and if they should be compelled to carry out his obligation by reason of a judgment being rendered against him, they will probably suffer damages. They further represent that as accommodation makers they are entitled to a stay or postponement of proceedings in the suit all as is provided for in the Soldiers' and Sailors' Civil Relief Act of 1940, as amended in 1942, 50 U.S.C.A. Appendix, § 501 et seq. Finally they aver that by authority of Section 206 of the said Act, they are entitled to have the interest on the above-mentioned obligation reduced from 8 per cent., as claimed, to 6 per cent. per annum. The prayer of their answer is therefore that this cause be stayed and postponed under said law for such a period of time as the extension or stay shall be granted to the defendant Hugh Fisher, and further that there be judgment reducing the rate of interest from 8 to 6 per cent.
Testimony was taken at the trial of the case to show, first, in what capacity the defendants did sign the note sued on, that is whether as co-makers or as accommodation makers or endorsers, and second, to show the manner in which they may suffer damage by reason of having a judgment rendered against them at this time. After considering the evidence, the trial judge rendered judgment in favor of these defendants ordering all proceedings herein to be stayed and postponed or suspended, for and during the period of the present military service of Hugh Fisher and for the period of three months from and after the date of expiration of said period of service, except upon leave of court granted upon application and hearing. The judgment makes no reference to the demand for the reduction in the rate of interest. The plaintiff took an appeal from the judgment granting the stay and the defendants have appealed from it because it failed to grant the reduction in interest as prayed for by them.
The vital issue that is presented is the right of these defendants to a stay of proceedings under the Soldiers' and Sailors' Civil Relief Act referred to. In that act as it was originally passed in 1940, the power of the court to stay any action or proceeding seems to have been restricted to cases where the application for such an order was made by the person in the military service himself, or some person on his behalf. That is indicated by Sec. 203 which makes its provisions apply only to such persons and also by Sec. 204 the last clause of which provides that: "Where the person in military service is a codefendant with others the plaintiff may nevertheless by leave of court proceed against the others." In 1942, however, the act was amended, and Sec. 103 (1) reads as follows: "Whenever pursuant to any of the provisions of this Act the enforcement of ny obligation or liability, the prosecution *Page 91 
of any suit or proceedings, the entry or enforcement of any order, writ, judgment, or decree, or the performance of any other act, may be stayed, postponed, or suspended, such stay, postponement, or suspension may, in the discretion of the court, likewise be granted to sureties, guarantors, endorsers, accommodation makers, and others, either primarily or secondarily subject to the obligation or liability, the performance or enforcement of which is stayed, postponed, or suspended." This provision clearly gives the court the power, after using its discretion, to grant the same order in favor of sureties, guarantors, endorsers, accommodation makers, and other persons either primarily or secondarily liable on the obligation sued on, that it can grant to the person who is in the military service himself. We must therefore conclude that the matter is one which rests solely within the sound discretion of the court, and, that being so, on this appeal we are concerned only with the question of the proper exercise of such discretion on the part of the judge of the court a qua.
It is pertinent to observe, in our opinion, that in Sec. 203 it is provided that the court may in its discretion, or on its own motion, or on application to it by the person in the military service or someone on his behalf, first, stay the execution of any judgment or order entered against such person, and second, vacate or stay any attachment or garnishment of property, moneyor debts in the hands of others either before or after judgmentas provided in this act, "unless in the opinion of the court the ability of the defendant to comply with the judgment or order entered or sought is not materially affected by reason of his military service." (Italics ours.) Hence, it appears that the court is limited in the use of its discretion to those cases in which a judgment or an order has already been entered against the person engaged in the military service or to cases in which attachment or garnishment may issue. On the other hand the amending Sec. 103 (1) which extends the power of the court and the use of its discretion to sureties, guarantors, etc., is much broader, and applies to "the enforcement of any obligation or liability, the prosecution of any suit or proceeding, the entry or enforcement of any order, writ, judgment, or decree, or theperformance of any other act." (Italics ours.) This amendment, coming two years after the original enactment of the law, manifests, in our opinion, the intention of Congress to not only liberalize its provisions in respect to the person in the military service himself but to extend that same liberality to those who had engaged themselves in his behalf as surety, guarantor, endorser or some other capacity on any obligation he may have undertaken prior to his entry.
Counsel for the plaintiff relies on two cases decided by the Supreme Court of this State, neither of which, in our opinion, has any particular bearing on the case before us. The first is that of Laperouse v. Eagle Indemnity Co. and Wilson Landry,202 La. 686, 12 So.2d 680, 682. In that case the plaintiff was suing in tort for damages arising out of the alleged negligence of the driver of an automobile which was insured against public liability by the defendant, Eagle Indemnity Company. The driver of the car, Wilson Landry, who was charged with the negligence causing the damage sued for, was in the military service, and a stay of proceedings was asked for by the Indemnity Company, the same as had been asked for by Landry, under the provisions of the act. The lower court ordered the stay in favor of both defendants, but on certiorari, the Supreme Court reversed the action of the district court in so far as the Indemnity Company was concerned. The reason, however, was that the plaintiff had a direct cause of action against the Indemnity Company and could have sued it alone if he had chosen to. Had it done so, the Indemnity Company certainly would have had no defense based on the military service of the person whose negligence caused the accident in driving the car which it had insured, as no demand was being made against him. The court states that it was not prepared to say whether the lower court had abused its discretion with respect to the defendant Landry as the purpose of the act is to prevent injury to the civil rights of those engaged in the military service of the United States during such service, "in order that they may be free to devote all of their energies to the military needs of the nation."
The other case cited by counsel for plaintiff is that of Charles Tolmas, Inc., v. Streiffer, 199 La. 25, 5 So.2d 372. We note, however, that the decision was rendered in that case in December, 1941. That, of course, was before the amendment of 1942 was adopted and which is the principal part of the Soldiers' and Sailors' Relief *Page 92 
Act with which we are concerned in this case. Moreover, it appeared that in that case, the defendant, on whose behalf a stayorder was being sought on the ground that he was a person in the military service, was a party interposed for the real defendant in the suit.
We are referred to numerous other decisions, mostly from federal courts, but in reading some of them we find that after all the issue which is generally presented is one concerning the use, by the court, of the discretion which is granted to it under the act. Whether there has been an abuse of that discretion or not, is a question which must be determined from the facts as found in each case.
From the record in the present case, we learn that the note sued on was prepared by the plaintiff and signed by the soldier, Hugh Fisher, who then took it to the defendant Ed. Fisher, his father, and his sister, Katherine Fisher, the other defendant, in the case. All that they did was to sign the note in order to facilitate him in obtaining a loan with the plaintiff. Under the facts shown they were purely accommodation makers or endorsers, but even so, that would make no difference because the provisions of Sec. 103 (1) apply to sureties, guarantors, etc., "whetherprimarily or secondarily subject to the obligation or liability,"
sought to be enforced. (Italics ours.)
Be that as it may, Hugh Fisher, the soldier, signed this note on January 9, 1942, and paid the installments as they matured each month until October of that year. On October 6, 1942, he addressed a letter to the plaintiff advising it that he had been examined and accepted for service in the United States Army and expected to be inducted on October 15th. In that letter he acknowledged his obligation and states that it will be impossible for him to continue to make the payments of $26 per month, as heretofore, out of the salary of $50 per month which he will receive as a soldier. He does offer, if plaintiff will accept, to pay $10 per month until the note is paid in full, or until he is discharged. He further states that he realizes that he had endorsers on the note who are not in a position to take care of the same, but that he has not the slightest intention of not paying it in full. Apparently he received no reply to this communication and within about six weeks this suit was filed.
Under the testimony that was adduced it appears further that this soldier, before he entered the service, was earning a rather substantial salary with the City of New Iberia by which he was employed. A certificate of the Treasurer of the City, filed in evidence, shows that during the fiscal year of 1942, he had been paid a total sum of $1,954.17. It is easy to see therefore that at the time he incurred this obligation he was in a rather good position to meet the installments which he obligated himself to pay without much danger of the other obligors being called on to assist him. Not only that, he showed his willingness to continue making payments at a reduced rate after he would enter the service, but this request seems to have been ignored.
It further appears from the testimony that his father Ed. Fisher, is a man sixty-six years old who has been employed as a clerk by the Southern Pacific Railroad Company for the past forty-eight years, at a salary of $130 a month which, he says, with the many deductions that have to be made now, nets him about $120. He says that with the present cost of living it is impossible for him to do anything more than meet his living expenses and therefore he is not in a position to make any payments on the note. His daughter, Miss Katherine Fisher, who signed the note works only irregularly, selling cosmetics. She, however, was not working at the time this case was tried, and was in a hospital.
It is not shown that either of these defendants owns any property that would be subject to execution under a judgment which may be rendered against them at this time, so the only possibility of enforcing payment, it seems, would be by garnishment process against the monthly salary received by Ed. Fisher. The hardship that would be thus imposed on this defendant would be one indirectly, at least, if not directly related to the military service of his son who, before that service, had been complying regularly with his obligation, but realizing that he could not continue to do so stated his inability in a letter to the plaintiff, written a few days before his induction. In making it clear also that his father and sister were not in a position to take care of his obligation, he very praise-worthily, in our opinion, offered to readjust his payments in a way in which he felt he could take care of them, notwithstanding his entry in the service, but his offer was ignored, and plaintiff lost but little time, after his induction, in filing suit. *Page 93 
Under the facts and circumstances presented we conclude that the trial judge properly exercised the discretion granted him under the law in issuing a stay order in favor of these defendants.
Inasmuch as there is no judgment to be rendered at this time on the note sued on, the demand of the defendants for a reduction in the rate of interest becomes a moot question which need not be considered.
For the reasons stated, it is ordered that the judgment appealed from be, and the same is hereby affirmed at the costs of the plaintiff, appellant herein.